IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| IPS CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>WCM INDUSTRIES, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)     No. 2:12-cv-02694-JPM-tmp<br>)<br>)<br>) |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR TRANSFER**

Before the Court is Defendant's "Motion to Dismiss for Lack of Declaratory Judgment Jurisdiction, Improper Venue Pursuant to FRCP 12(b)(3), or in the Alternative, to Transfer Action to the District of Colorado," which was filed on December 28, 2012. (ECF No. 7.)  Plaintiff responded in opposition on January 28, 2013.  (ECF No. 19.)  Defendant replied in support on February 11, 2013.  (ECF No. 20.)  With leave of the Court (ECF No. 26), Plaintiff again responded in opposition on March 15, 2013 (ECF No. 22-1).

On February 25, 2013, the Court held a telephonic hearing on Defendant's Motion.  (ECF No. 25.)  The following attorneys attended that hearing telephonically:  Bruce J. Rose, Scott Benjamin Pleune, Stephen R. Lareau, and Bruce S. Kramer representing Plaintiff; and Glen G. Reid, Jr., Ian R. Walsworth, and Matthew F. Jones representing Defendant.  (Id.)

For the reasons stated below, Defendant's "Motion to
Dismiss for Lack of Declaratory Judgment Jurisdiction, Improper
Venue Pursuant to FRCP 12(b)(3), or in the Alternative, to
Transfer Action to the District of Colorado" (ECF No. 7) is
DENIED.

## I.   BACKGROUND

In this action, Plaintiff IPS Corporation ("IPS" or
"Plaintiff") requests a declaration that the flange cover, or
press-in trim kit, that it developed in 2012 (the "2012
Product") does not infringe a patent held by WCM Industries,
Inc. ("WCM" or "Defendant"), U.S. Patent No. 7,503,083 ("WCM's
Patent" or "Patent '083").

"In August 2010, IPS acquired American Brass & Aluminum
Foundry Company [("American Brass")] and became involved in
ongoing litigation between WCM and [American Brass] regarding
whether [American Brass's] 'Press-In' trim kits [(the "2010
American Brass Product")] infringed [WCM's Patent]."  (Pl.'s
Resp., ECF No. 19, at 2.)

In October 2010, WCM entered into a settlement agreement
(the "Settlement Agreement") with American Brass.  (See ECF
No. 20-2 at PageID 178.)[1]  The following provisions are contained
in the Settlement Agreement:

---

[1] The Court will refer to Page Identification ("PageID") numbers when
referencing documents other than the Complaint (ECF No. 1), Defendant's
Motion (ECF No. 7), and the parties' memoranda supporting or opposing

- a choice-of-law clause stating that "[t]his Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Colorado" (<u>id.</u> at PageID 177);

- a forum-selection clause stating that "[t]he United States District Court for the District of Colorado [(the "Colorado District Court")] will have exclusive jurisdiction over any dispute arising from this Settlement Agreement" (<u>id.</u>);

- a clause stating that "[American Brass] shall . . . refrain in the Unites States from making, selling, offering for sale, using, and/or importing Accused Products" (<u>id.</u> at PageID 175);

- a clause stating that "'Accused Products' as used in this Agreement is understood to mean the [2010 American Brass Product] and all colorable imitations thereof" (<u>id.</u>);

- a clause stating that "[e]ach of the Parties expressly warrants that they have authority to enter into this Settlement Agreement and to bind themselves and each of their respective . . . successors . . . and assigns to the terms hereof" (<u>id.</u> at PageID 176);

---

Defendant's Motion (ECF Nos. 7-1, 19, 20, 22-1).  A number of the documents referenced in this Order, other than the Complaint, Defendant's Motion, and the parties' memoranda, have the same Electronic Case Filing Number, but are not consecutively paginated, so references to PageID numbers are more precise.

- a clause stating that "[a]s part of a full and complete settlement, the Parties are entering into a Stipulated Consent Judgment and Permanent Injunction . . . which is the subject of a separate document which is incorporated herein by this reference" (id. at PageID 175); and

- a clause stating that "[t]his Settlement Agreement, along with the [Stipulated Consent Judgment and Permanent Injunction], constitute the entire agreement of the Parties with regard to the specific subject matter herein" (id. at PageID 176).

On November 9, 2010, the Colorado District Court entered an Order on Stipulated Consent Judgment (the "Stipulated Consent Judgment") (ECF No. 7-3 at PageID 106-08) that is, in relevant part, identical to the parties' Stipulated Consent Judgment and Permanent Injunction that the parties entered into on October 26, 2010 (see id. at PageID 102-04). The following provisions are contained in the Stipulated Consent Judgment:

- a statement that "[the Colorado District Court] retains jurisdiction over this Stipulated Consent Judgment and Permanent Injunction and any applications with regard to enforcement thereof" (id. at PageID 106);

- a statement that "[the Colorado District Court] permanently enjoins [American Brass and its successors and assigns] from directly or indirectly infringing [WCM's Patent] . . .

4

by making, using, selling, offering for sale, and importing press in trim kits . . . of the type specifically shown in Exhibit B of the Complaint [the 2010 American Brass Product] and colorable imitations thereof" (id. at PageID 107); and

- a liquidated damages provision that is triggered if "[American Brass] violates any term of this Stipulated Consent Judgment and fails to cure such violation within thirty (30) days after receipt of written notice of the violation" and stating that, if the liquidated provision is triggered, "[American Brass] shall be liable for liquidated damages in the amount equal to 50% of the gross revenues collected by [American Brass] for Accused Products sold during the period of time [American Brass] was in violation of any material term of this Stipulated Consent Judgment" and reasonable attorneys' fees if WCM proves such a violation in court (see id. at PageID 107-08).

On May 13, 2011, WCM sent a letter to IPS stating that a flange cover, or press-in trim kit, that IPS developed in 2011 (the "2011 Product") "is in violation of a Consent Judgment entered into on October 26, 2010" and "fails to avoid infringement of [WCM's Patent]." (ECF No. 4-1 at PageID 26-27.) IPS responded by email, stating that IPS would withdraw the 2011 Product from the market: "IPS has decided in an effort to

resolve this matter amicably to withdraw its current product from the market and will take steps to do so immediately.  IPS may or may not introduce a product later with further design modifications." (ECF No. 4-2 at PageID 32.)

On May 25, 2012, IPS sent a letter to WCM stating that "IPS has recently designed another product that it believes does not infringe [WCM's Patent] and also does not violate the [Stipulated Consent Judgment] for the reasons set forth herein, and it intends to sell and distribute this new product." (ECF No. 4-3 at PageID 34.)

From May 25, 2012, to July 20, 2012, IPS and WCM engaged in a correspondence regarding whether the 2012 Product infringed on WCM's Patent and whether the 2012 Product violates the Stipulated Consent Judgment.  (See ECF Nos. 4-3 to 4-6 at PageID 34-63.)

On June 19, 2012, WCM sent a letter to IPS, stating that WCM had made the following determinations:  "We believe that the [2012 Product] infringes at least claims 1 and 5 of [WCM's Patent].  Moreover, the manufacture and sale by IPS of this product would be in violation of the [Stipulated Consent Judgment]." (ECF No. 4-4 at PageID 47.)  In making this determination, WCM indicated that it had evaluated a sample of the 2012 Product:  "We appreciate you sending to us the actual physical embodiment of the [2012 Product].  When assembled in

its functional state, it looks like the below image: . . . ."
(Id.)

On July 18, 2012, IPS responded by letter to WCM's letter
of June 19, 2012. (See ECF No. 4-5 at PageID 51.) IPS's letter
is divided into two main parts with headings reading "IPS's
[2012 Product] Does Not Infringe [WCM's Patent]" and "IPS's
[2012 Product] Does Not Violate the [Stipulated] Consent
Judgment." (Id. at PageID 51, 55.) The letter also states that
"IPS is proceeding to make and sell [the 2012 Product]." (Id.
at PageID 58.)

On July 20, 2012, WCM responded by letter to IPS's letter
of July 18, 2012. (See ECF No. 4-6 at PageID 60.) WCM's letter
begins by stating that:

> In response to your last letter, you seem to focus on
> our previous claim construction directed to IPS' prior
> infringing device, in comparison with our present
> construction of the claims as it relates to IPS'
> redesigned device. As you can appreciate, because the
> two infringing products are different, our analysis is
> obviously directed to the distinctions of the
> respective features.

(Id.) WCM further stated that "we conclude that [the 2012
Product] infringes [WCM's Patent] and its sale would certainly
violate the [Stipulated] Consent Judgment" (id. at PageID 62);
that "[s]ome competitors, such as IPS, have apparently decided
that it is easier to try to copy WCM's accomplishments and take
the risk that WCM will take legal action to enforce its hard-

fought for rights, rather than invest in their own R&D and patenting efforts" (id); and that: "WCM intends to and will aggressively pursue those companies that make and sell any devices that adopt WCM's unique patented combinations.  To date, IPS has failed in its efforts to avoid infringement of WCM's Patents" (id. at PageID 63).

On August 9, 2012, IPS filed a Complaint for Declaratory Relief (the "Complaint") in this Court.  (See ECF No. 1.)  In the Complaint, IPS alleges that:

> On or about May 25, 2012, counsel for IPS wrote to counsel for WCM advising WCM that "IPS has recently redesigned another product that it believes does not infringe [WCM's Patent] and also does not violate the [Stipulated Consent Judgment] . . ."  IPS also advised WCM that "it intends to sell and distribute this new product."

(Id. ¶ 13 (third alteration in original).)  IPS further alleges that "IPS provided WCM's counsel with a sample of [the 2012 Product], on or about June 19, 2012" (id. ¶ 14), and that:

> [In a letter from WCM,] dated July 20, 2012 . . . . WCM's counsel continued to assert that [the 2012 Product] infringes [WCM's Patent].  WCM's counsel further suggested that IPS has "decided . . . [to] take the risk that WCM will take legal action . . ."  Further, WCM's counsel asserted that "WCM intends to and will aggressively pursue those companies that make and sell any devices that adopt WCM's unique patented combinations."

(Id. ¶ 16 (final three alterations in original).)  IPS then requests the following relief:

> WHEREFORE, Plaintiff IPS Prays that this Court enter judgment: (a) Declaring that Plaintiff, and including specifically [the 2012 Product] made, used, imported, sold and/or offered for sale by or for Plaintiff or its related entities, has not infringed and is not infringing any valid purported patent rights of WCM in [WCM's Patent], and otherwise has not violated any provision of the patent laws of the United States; . . . .

(Id. ¶ 24(a).)

"[A]fter an attempt to resolve the case amicably, [IPS] served the [Complaint on WCM] on December 7, 2012." (Pl.'s Resp., ECF No. 19, at 4; see also Aff. of Service, ECF No. 6.) On December 28, 2012, WCM filed the Motion presently before this Court. (ECF No. 7.)

## II. ANALYSIS

The Court considers, in turn, whether it has subject-matter jurisdiction over this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 (2006); whether venue is appropriate in the Western District of Tennessee; and whether transfer to the Colorado District Court is appropriate.

A.   **This Court Has Subject-Matter Jurisdiction Pursuant to the Declaratory Judgment Act.[2]**

WCM argues that IPS's "claims do not arise to the level of a justiciable 'case or controversy' because, on a plain reading of the Complaint, at the time of the Complaint was filed, IPS could only allege a 'potential' infringement by a product not yet released and a 'fear' of damages."[3]   (Def.'s Mot., ECF No. 7, ¶ 2.)

The Declaratory Judgment Act states that:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201 (2006).   "The phrase 'a case of actual controversy' in the Act refers to the types of 'cases' and 'controversies' that are justiciable under Article III of the

---

[2] The United States Court of Appeals for the Federal Circuit (the "Federal Circuit") has exclusive jurisdiction over an appeal from a final order in this action.   See Landmark Screens, LLC v. Morgan, Lewis, & Bockius, LLP, 676 F.3d 1354, 1360 (Fed. Cir. 2012) (explaining that the Federal Circuit has exclusive jurisdiction over an appeal from a district court that arose under federal patent laws).   The Federal Circuit applies Federal Circuit precedent when reviewing jurisdiction pursuant to the Declaratory Judgment Act.   3M Co. v. Avery Dennison Corp., 673 F.3d 1372, 1377 (Fed. Cir. 2012) ("Whether an actual case or controversy exists so that a district court may entertain an action for a declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law." (internal quotation marks omitted)).

[3] In its Reply, WCM argues that "IPS has not made any showing of why it should be excused from [the forum-selection clauses in] the Settlement Agreement or the [Stipulated] Consent Judgment, and therefore the Court must dismiss or transfer this case to the agreed upon forum."   (ECF No. 20 at 7.)   The forum-selection clauses, however, are not relevant to subject-matter jurisdiction.   See Godsey v. Miller, 9 F. App'x 380, 383 (6th Cir. 2001) (per curiam) ("[T]he issue of a forum selection clause is an independent contractual concern created by the actions of the parties, and is not linked to the inherent subject-matter jurisdiction of the court."), quoted in DaWalt v. Purdue Pharma, LP, 397 F.3d 392, 399 (6th Cir. 2005).

U.S. Constitution." Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office, 689 F.3d 1303, 1317-18 (Fed. Cir. 2012).

"The party seeking to establish declaratory judgment jurisdiction bears the burden of demonstrating that an Article III case or controversy exists at the time the claim for declaratory relief is filed." Matthews Int'l Corp. v. Biosafe Eng'g, LLC, 695 F.3d 1322, 1328 (Fed. Cir. 2012).

> [I]n determining whether a justiciable controversy is present, the analysis must be calibrated to the particular facts of each case, with the fundamental inquiry being "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

Id. (quoting MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)).

"[T]o establish an injury in fact traceable to the patentee, a declaratory judgment plaintiff must allege both (1) an affirmative act by the patentee related to the enforcement of his patent rights and (2) meaningful preparation to conduct potentially infringing activity." Ass'n for Molecular Pathology, 689 F.3d at 1318 (citation omitted). In addition, "[i]n deciding whether to entertain a declaratory judgment request, a court must determine whether resolving the case serves the objectives for which the Declaratory Judgment Act was

11

created." <u>Cat Tech LLC v. TubeMaster, Inc.</u>, 528 F.3d 871, 883
(Fed. Cir. 2008).

Regarding the first element that a plaintiff must allege,
"the bedrock rule [is] that a case or controversy must be based
on a <u>real</u> and <u>immediate</u> injury or threat of future injury that
is <u>caused by the defendants</u> — an objective standard that cannot
be met by a purely subjective or speculative fear of future
harm." <u>Prasco, LLC v. Medicis Pharm. Corp.</u>, 537 F.3d 1329, 1339
(Fed. Cir. 2008). "A patentee can cause such an injury in a
variety of ways, for example, by creating a reasonable
apprehension of an infringement suit . . . ." <u>Id.</u> As a result,
"where a patentee asserts rights under a patent based on certain
identified ongoing or planned activity of another party, and
where that party contends that it has the right to engage in the
accused activity without license, an Article III case or
controversy will arise." <u>Ass'n for Molecular Pathology</u>, 689
F.3d at 1320 (quoting <u>SanDisk Corp. v. STMicroelectronics, Inc.</u>,
480 F.3d 1372, 1381 (Fed. Cir. 2007)) (internal quotation marks
omitted).

Regarding the second element that a plaintiff must allege,
"although a party need not have engaged in the actual
manufacture or sale of a potentially infringing product to
obtain a declaratory judgment of non-infringement, there must be
a showing of 'meaningful preparation' for making or using that

12

product."  Cat Tech LLC, 528 F.3d at 881.  "If a declaratory
judgment plaintiff has not taken significant, concrete steps to
conduct infringing activity, the dispute is neither 'immediate'
nor 'real' and the requirements for justiciability have not been
met."  Id. at 880.

     The immediacy requirement under the second element is
satisfied if "it appears likely that [the party seeking
declaratory judgment] can expeditiously solicit and fill orders
for [the potentially infringing product]."  See id. at 882.
"[T]he reality requirement is often related to the extent to
which the technology in question is 'substantially fixed' as
opposed to 'fluid and indeterminate' at the time declaratory
relief is sought."  Id. (quoting Sierra Applied Scis., Inc. v.
Advanced Energy Indus., Inc., 363 F.3d 1361, 1379 (Fed. Cir.
2004)).  The technology is substantially fixed if "it appears
likely that, once the cloud of liability for infringement is
eliminated, the accused products can be produced without
significant design change."  See id. at 882-83.

     Regarding a district court's duty to determine
"whether resolving the case serves the objectives for which the
Declaratory Judgment Act was created," see id. at 883, "putting
the challenger to the choice between abandoning his rights or
risking prosecution [] is a dilemma that it was the very purpose
of the Declaratory Judgment Act to ameliorate."  SanDisk Corp.,

480 F.3d at 1378-79 (quoting <u>MedImmune, Inc.</u>, 549 U.S. at 129)
(internal quotation marks omitted).  "Article III 'd[oes] not
require, as a prerequisite to testing the validity of the law in
a suit for injunction, that the plaintiff bet the farm, so to
speak, by taking the violative action.'"  <u>Id.</u> at 1378
(alteration in original) (quoting <u>MedImmune, Inc.</u>, 549 U.S. at
129).

The Federal Rules of Civil Procedure "govern the procedure
for obtaining a declaratory judgment under 28 U.S.C. § 2201."
Fed. R. Civ. P. 57.  Federal Rule of Civil Procedure 12(b)(1)
("Rule 12(b)(1)") allows a party to bring a motion to dismiss
for "lack of subject-matter jurisdiction."  Fed. R. Civ. P.
12(b)(1).

WCM indicates that it intends to make both facial and
factual challenges to the subject-matter jurisdiction of this
Court.  Regarding the facial challenge, the first section
heading in WCM's Memorandum in Support of its Motion states
that:  "The Allegations in IPS' Complaint Fail to Establish
Subject Matter Jurisdiction."  (ECF No. 7-1 at 2.)  Regarding
the factual challenge, WCM states in its argument that:
"'Where, as here, the challenge is made, not to the sufficiency
of the jurisdictional allegations, but to the underlying facts
supporting those allegations, a trial court may go beyond the
allegations of the complaint . . . .'"  (<u>Id.</u> at 3 (purporting to

quote <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982)

(interpreting Rule 12(b)(1)).)[4]

The Court first addresses WCM's facial and factual

challenges to the subject-matter jurisdiction of this Court and

then determines if exercising jurisdiction serves the objectives

of the Declaratory Judgment Act.

**1.   The Complaint Contains Sufficient Factual Matter to Establish Subject-Matter Jurisdiction.**

The Court now will discuss the standard of review for

facial challenges under Rule 12(b)(1), determine whether this

Court has subject-matter jurisdiction based on the allegations

in the Complaint, and address WCM's arguments.

**a.   Standard of Review**

Under Rule 12(b)(1), if a "motion simply challenges the

court's subject matter jurisdiction based on the sufficiency of

the pleading's allegations — that is, the movant presents a

'facial' attack on the pleading — then those allegations are

taken as true and construed in a light most favorable to the

complainant." <u>Cedars-Sinai Med. Ctr. v. Watkins</u>, 11 F.3d 1573,

1583 (Fed. Cir. 1993) (citing <u>Scheuer v. Rhodes</u>, 416 U.S. 232,

236 (1974)); <u>see also</u> <u>McCormick v. Miami Univ.</u>, 693 F.3d 654,

658 (6th Cir. 2012) ("Under a facial attack, all of the

---

[4] The actual quote is as follows:  "[I]t may be contended that the jurisdictional allegations of the complaint were not true.  A trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." <u>Adams</u>, 697 F.2d at 1219.

allegations in the complaint must be taken as true . . . ." (internal quotation marks omitted)); <u>Folden v. United States</u>, 379 F.3d 1344, 1354 (Fed. Cir. 2004) ("In deciding whether there is subject-matter jurisdiction, the allegations stated in the complaint are taken as true and jurisdiction is decided on the face of the pleadings." (internal quotation marks omitted)).

### b.   The Complaint's Allegations Are Sufficient to Establish Subject-Matter Jurisdiction.

The Complaint's allegations establish "both (1) an affirmative act by the patentee related to the enforcement of his patent rights, and (2) meaningful preparation to conduct potentially infringing activity." <u>Ass'n for Molecular Pathology</u>, 689 F.3d at 1318 (citation omitted).

First, WCM has taken affirmative action regarding its rights in WCM's Patent.  In paragraph thirteen, the Complaint alleges that IPS sent a letter to WCM "[o]n or about May 25, 2012," stating that the 2012 Product does not infringe WCM's Patent and that "IPS also advised WCM that 'it intends to sell and distribute this new product.'"  (ECF No. 1 ¶ 13.)  In paragraph sixteen, the Complaint alleges that WCM stated, in a "letter dated July 20, 2012," that the 2012 product infringes WCM's Patent, that "IPS has 'decided . . . [to] take the risk that WCM will take legal action . . . ,'" and that "'WCM intends to and will aggressively pursue those companies that make and

16

sell any devices that adopt WCM's unique patented combinations.'" (Id. ¶ 16 (alterations in original).) The allegations in the Complaint, therefore, establish that this is a case "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license." See Ass'n for Molecular Pathology, 689 F.3d at 1320 (quoting SanDisk Corp., 480 F.3d at 1381) (internal quotation marks omitted).

Second, the record indicates that IPS made meaningful preparations to make and sell the 2012 Product. The Complaint alleges that IPS both "advised WCM that 'it intends to sell and distribute [the 2012 Product]'" (ECF No. 1 ¶ 13) and "provided WCM's counsel with a sample of [the 2012 Product], on or about June 19, 2012" (id. ¶ 14). The record indicates, therefore, that the dispute is immediate, because "it appears likely that [the party seeking declaratory judgment] can expeditiously solicit and fill orders for [the potentially infringing product]," and sufficiently real, because "it appears likely that, once the cloud of liability for infringement is eliminated, the accused products can be produced without significant design change." Cat Tech LLC, 528 F.3d at 882-83.

**c.   WCM's Arguments to the Contrary Are Not Persuasive.**

First, in its Memorandum in Support of its Motion,

WCM argues that "IPS . . . fails to allege in its Complaint that IPS was even <u>preparing</u> to release the [2012 Product]."  (ECF No. 7-1 at 5.)

WCM's argument is factually incorrect.  Paragraph thirteen of the Complaint states that, in a letter written "[o]n or about May 25, 2012," IPS advised WCM that "'IPS has recently redesigned another product'" and that IPS "'intends to sell and distribute this new product.'"  (ECF No. 1 ¶ 13.)  IPS's statement indicates that IPS was preparing to sell the 2012 Product.  <u>See</u> <u>Cedars-Sinai Med. Ctr.</u>, 11 F.3d at 1583 (stating that, in a facial attack, "allegations are taken as true and construed in a light most favorable to the complainant").

Furthermore, in making this argument WCM cites <u>Prasco, LLC</u> (<u>see</u> ECF No. 7-1 at 5), which is not applicable to WCM's argument.  WCM's argument essentially challenges IPS's ability to establish the second element necessary to establish subject-matter jurisdiction under the Declaratory Judgment Act:  whether IPS had made "meaningful preparation to conduct potentially infringing activity."  <u>See</u> <u>Ass'n for Molecular Pathology</u>, 689 F.3d at 1318.  The analysis in <u>Prasco, LLC</u>, however, did not address the second element necessary to establish subject-matter jurisdiction under the Declaratory Judgment Act.  <u>See</u> <u>Prasco, LLC</u>, 537 F.3d at 1336 n.4 ("[W]hether there has been potentially infringing activity or meaningful preparation to conduct

potentially infringing activity . . . . is not in contention
here . . . .").

Second, in its Memorandum in Support of its Motion, WCM
argues that the "Complaint also fails to allege any specific
harm to IPS that could serve as a basis for this lawsuit." (ECF
No. 7-1 at 5.)  Instead, WCM argues, "IPS has [merely] asserted
'a cloud over Plaintiff's business activities.'" (Id. at 5
(quoting Compl., ECF No. 1, ¶ 21).)  In making this argument,
WCM relies primarily on Prasco, LLC (see id.), where the Federal
Circuit rejected the plaintiff's contention that "paralyzing
uncertainty" could create subject-matter jurisdiction.  See
Prasco, LLC, 537 F.3d at 1338.

Prasco, LLC, however, addressed circumstances that are
materially different from the case presently before this Court.
In Prasco, LLC, the Federal Circuit did not find jurisdiction
because "all we have before us is Prasco's allegation that its
product does not infringe the defendants' patents" and "not only
have the defendants not taken a concrete position adverse to
Prasco's, but they also have taken no affirmative actions at all
related to Prasco's current product." Prasco, 537 F.3d at 1340.
In contrast, the Complaint in the instant case alleges that WCM
sent two letters stating that the 2012 Product infringes WCM's
Patent and, in the second letter, indicated that WCM will pursue
legal remedies against parties that infringe WCM's patents.

19

(See ECF No. 1 ¶¶ 14, 16.)  The Complaint thus indicates that
WCM has taken a concrete position adverse to IPS — namely, that
the 2012 Product infringes WCM's Patent — and that WCM has taken
the affirmative action of sending a letter to IPS indicating
that it intends to pursue legal action to protect its patent
rights.

Third, at the hearing, WCM argued that the Complaint would
establish subject-matter jurisdiction if the reference to "this
new product" that IPS "intends to sell and distribute" in
paragraph thirteen was a reference to the 2012 Product and not
the 2011 Product.

In the context of the Complaint it is clear that the
reference to "this new product" is a reference to the 2012
Product.  Paragraph eleven refers to the 2011 Product:  "On or
about May 13, 2011, Defendant WCM sent a letter to IPS alleging
that '[t]he "new" press trim kit of IPS . . . fails to avoid
infringement of [WCM's Patent].'"  (ECF No. 1 ¶ 11 (alterations,
except for the final alteration, in original).)  Since the
letter was sent in 2011, the "new" product developed by IPS
refers to the 2011 Product.

Paragraph twelve of the Complaint then makes the following
allegation:

> [In response to WCM's May 13, 2011, letter] IPS also
> indicated to WCM that, "in view of the minimal volume
> of sales, IPS has decided in an effort to resolve this

> matter amicably to withdraw its current product from
> the market . . ." IPS further stated to WCM that "IPS
> may or may not introduce a product later with further
> design modifications."

(Id. ¶ 12.) Paragraph twelve, therefore, indicates that IPS

withdrew the 2011 Product and might introduce a different

product at a later date.

Paragraph thirteen of the Complaint then alleges that IPS

wrote a letter to WCM "[o]n or about May 25, 2012," stating that

"'IPS has recently redesigned another product'" and that IPS

"'intends to sell and distribute this new product.'" (Id. ¶ 13

(emphasis added).) Since paragraph twelve indicates that IPS

withdrew the 2011 Product, and paragraph thirteen refers to a

"redesigned" product, the subsequent reference to "this new

product" in paragraph thirteen clearly refers to the 2012

Product. Based on this finding by the Court, WCM indicated at

the hearing that it would agree that this Court has subject-

matter jurisdiction.

In summary, the Court finds that the Complaint's

allegations are sufficient to establish subject-matter

jurisdiction under the Declaratory Judgment Act. WCM's facial

challenge fails.

## 2.   The Facts Underlying the Complaint Are Sufficient to Establish Subject-Matter Jurisdiction.

The Court now will discuss the standard of review for

factual challenges under Rule 12(b)(1), determine whether this

21

Court has subject-matter jurisdiction based on the facts underlying the Complaint, and address WCM's arguments.

    **a.   Standard of Review**

"If a Rule 12(b)(1) motion challenges a complaint's allegations of jurisdiction, the factual allegations in the complaint are not controlling and only uncontroverted factual allegations are accepted as true." Shoshone Indian Tribe of Wind River Reservation, Wyo. v. United States, 672 F.3d 1021, 1030 (Fed. Cir. 2012) (citing Cedars-Sinai Med. Ctr., 11 F.3d at 1583); see also Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007) ("Where . . . there is a factual attack on the subject-matter jurisdiction alleged in the complaint, no presumptive truthfulness applies to the allegations [in the complaint.]").

"In resolving these disputed predicate jurisdictional facts, 'a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings. . . .'" Shoshone Indian Tribe of Wind River Reservation, Wyo., 672 F.3d at 1030 (alteration in original) (quoting Cedars-Sinai Med. Ctr., 11 F.3d at 1584); see also Gentek Bldg. Prods., Inc., 491 F.3d at 330 ("In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts.").

> **b.    The Record Before the Court Indicates that This Court Has Subject-Matter Jurisdiction.**

The record before the Court establishes "both (1) an affirmative act by the patentee related to the enforcement of his patent rights, and (2) meaningful preparation to conduct potentially infringing activity." <u>Ass'n for Molecular Pathology</u>, 689 F.3d at 1318 (citation omitted).

First, the record indicates that WCM took affirmative action regarding its patent rights. IPS stated in its letter of July 18, 2012, that the 2012 Product does not infringe WCM's Patent and that "IPS is proceeding to make and sell [the 2012 Product]." (ECF No. 4-5 at PageID 51-55, 58.) WCM responded to IPS's letter by a letter dated July 20, 2012, in which WCM stated that the 2012 Product infringes WCM's Patent, that "[s]ome competitors, such as IPS, have apparently decided that it is easier to try to copy WCM's accomplishments and take the risk that WCM will take legal action to enforce its hard-fought for rights," and that "WCM intends to and will aggressively pursue those companies that make and sell any devices that adopt WCM's unique patented combinations." (ECF No. 4-6 at PageID 62-63.) The record, therefore, indicates that this is a case "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the

accused activity without license." See Ass'n for Molecular
Pathology, 689 F.3d at 1320 (quoting SanDisk Corp., 480 F.3d at
1381) (internal quotation marks omitted).

     Second, the record indicates that IPS made meaningful
preparations to make and sell the 2012 Product.  The
correspondence indicates that IPS provided a sample of the 2012
Product to WCM (see WCM Letter of June 19, 2012, ECF No. 4-4, at
PageID 47) and that IPS twice stated that it intended to sell
the 2012 Product (see IPS Letter of May 25, 2012, ECF No. 4-3,
at PageID 34; IPS Letter of July 18, 2012, ECF No. 4-5, at
PageID 58).  The record indicates, therefore, that the dispute
is immediate, because "it appears likely that [the party seeking
declaratory judgment] can expeditiously solicit and fill orders
for [the potentially infringing product]," and sufficiently
real, because "it appears likely that, once the cloud of
liability for infringement is eliminated, the accused products
can be produced without significant design change." Cat Tech
LLC, 528 F.3d at 882-83.

     **c.   WCM's Arguments to the Contrary Are Not Persuasive.**

     The crux of WCM's factual attack is that "IPS ignores the
fact that the potential redesigned product was not made
available for purchase at the time of the filing of the
Complaint." (Def.'s Mem. in Supp., ECF No. 7-1, at 5.)  WCM's
argument essentially challenges IPS's ability to establish the

second element necessary to establish subject-matter jurisdiction under the Declaratory Judgment Act:  whether IPS had made "meaningful preparation to conduct potentially infringing activity."  See Ass'n for Molecular Pathology, 689 F.3d at 1318.

First, the Court has found that IPS met its burden of showing "meaningful preparation to conduct potentially infringing activity."  See supra Part II.A.2.b.

Second, WCM relies on Prasco, LLC, which is not applicable to WCM's argument.  The analysis in Prasco, LLC, did not address the second element necessary to establish subject-matter jurisdiction under the Declaratory Judgment Act.  See Prasco, LLC, 537 F.3d at 1336 n.4 ("[W]hether there has been potentially infringing activity or meaningful preparation to conduct potentially infringing activity . . . . is not in contention here . . . .").

Finally, WCM's argument is factually incorrect.  In addition to its Response, IPS submitted the Declaration of Jeffrey A. Humber, which was executed on January 24, 2013.  (See ECF No. 19-1 at PageID 161.)  In that Declaration, the Product Development manager of IPS Corporation states that "IPS began selling [the 2012 Product] in the U.S. on May 31, 2012, and continues to sell that product in the U.S. presently."  (Id.)

On the date the Complaint was filed, August 9, 2012 (see Compl., ECF No. 1), therefore, IPS was selling the 2012 Product.

At the hearing, WCM questioned whether the Declaration of Jeffrey A. Humber is sufficient to establish subject-matter jurisdiction.  WCM, however, offered no evidence to contradict the Declaration.  A preponderance of the evidence before the Court, therefore, indicates that IPS was selling the 2012 Product when the Complaint was filed.  See M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1327 (Fed. Cir. 2010) ("A plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence.").

In summary, the Court finds that the record is sufficient to establish subject-matter jurisdiction under the Declaratory Judgment Act.  WCM's factual challenge fails.

### 3. Resolving This Controversy Serves the Objectives of the Declaratory Judgment Act.

In SanDisk Corp., the Federal Circuit held that there was subject-matter jurisdiction under the Declaratory Judgment Act when the plaintiff did not continue licensing negotiations in which the defendant asserted a right to a royalty and the plaintiff contested that right.  SanDisk Corp., 480 F.3d at 1382.  The court reasoned that the plaintiff "need not 'bet the farm,' so to speak, and risk a suit for infringement by cutting off licensing discussions and continuing in the identified

activity before seeking a declaration of its legal rights." Id.
(footnote omitted) (citing MedImmune, Inc., 549 U.S. at 132
n.11).

In the instant action, IPS would be put in position similar
to that of the plaintiff in SanDisk Corp.  IPS indicated that it
intended to sell the 2012 Product (see Compl., ECF No. 1, ¶ 13;
IPS Letter of May 25, 2012, ECF No. 4-3, at PageID 34; IPS
Letter of July 18, 2012, ECF No. 4-5, at PageID 58) and WCM
maintained that the 2012 Product infringed WCM's Patent and
indicated that WCM would pursue legal remedies (see Compl., ECF
No. 1, ¶ 16; WCM Letter of June 19, 2012, ECF No. 4-4, at PageID
47; WCM Letter of July 20, 2012, ECF No. 4-6, at PageID 62-63).
IPS, therefore, had a choice between "'bet[ting] the farm,' so
to speak, and risk[ing] a suit for infringement by cutting off
[claim-construction] discussions and continuing in the
identified activity before seeking a declaration of its legal
rights." See SanDisk Corp., 480 F.3d at 1382 (footnote omitted)
(citing MedImmune, Inc., 549 U.S. at 132 n.11).

IPS was faced with "a dilemma that it was the very purpose
of the Declaratory Judgment Act to ameliorate." SanDisk Corp.,
480 F.3d at 1378-79 (quoting MedImmune, Inc., 549 U.S. 129)
(internal quotation marks omitted).  The Court finds that
"resolving the case serves the objectives for which the

27

Declaratory Judgment Act was created." <u>See</u> <u>Cat Tech LLC</u>, 528 F.3d at 883.

In summary, the Court finds that WCM's facial and factual challenges to subject-matter jurisdiction are not persuasive and that this Court may exercise subject-matter jurisdiction over the instant action pursuant to the Declaratory Judgment Act.  In addition, the Court finds that resolving the instant action serves the objectives of the Declaratory Judgment Act.  The Court, therefore, will exercise subject-matter jurisdiction over the instant action.

**B.   Venue Is Proper in the Western District of Tennessee Pursuant to 28 U.S.C. § 1391(b)(2).**

WCM states that it is challenging venue under Federal Rule of Civil Procedure 12(b)(3):  "WCM respectfully asks this Court for an Order: . . . Dismissing this action for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3); . . . ."[5] (Def.'s Mot., ECF No. 7, at 2.)

Rule 12(b)(3) provides a defense to a claim based on "improper venue."  Fed. R. Civ. P. 12(b)(3).  Twenty-eight U.S.C. § 1400(b) determines venue in "[a]ny civil action for patent infringement."  28 U.S.C. § 1400(b) (2006).  Venue in an

---

[5] In its Reply, WCM argues that "IPS has not made any showing of why it should be excused from [the forum-selection clauses in] the Settlement Agreement or the [Stipulated] Consent Judgment, and therefore the Court must dismiss or transfer this case to the agreed upon forum." (ECF No. 20 at 7.)  The forum-selection clauses, however, are not relevant to a Rule 12(b)(3) motion.  "[A] forum selection clause should not be enforced through dismissal for improper venue under FRCP 12(b)(3) because these clauses do not deprive the court of proper venue."  <u>Wong v. PartyGaming Ltd.</u>, 589 F.3d 821, 830 (6th Cir. 2009).

action seeking a declaration that a product does not infringe a patent, however, is governed by 28 U.S.C. § 1391.  See VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1583 (Fed. Cir. 1990) ("It has long been held that a declaratory judgment action alleging that a patent is invalid and not infringed — the mirror image of a suit for patent infringement — is governed by the general venue statutes, not by [28 U.S.C.] § 1400(b).").  Under 28 U.S.C. § 1391, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2) (2006).

WCM argues that "there is no evidence or specific allegation that a substantial portion of the relevant events giving rise to this action occurred within Tennessee, or that the [2012 Product] was designed by IPS in Tennessee."  (Def.'s Mem. in Supp., ECF No. 7-1, at 8.)

WCM's argument is not persuasive and venue is proper in the Western District of Tennessee.  The Complaint alleges that "IPS is a corporation . . . having a principal place of business at 500 Distribution Parkway, Collierville, Tennessee 38017, and is doing business in this State and District."  (ECF No. 1 ¶ 2.) Furthermore, the Complaint alleges that "[v]enue is proper in this Court under the provisions of 28 U.S.C. § 1391 . . .

29

because Plaintiff is in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District." (Compl., ECF No. 1, ¶ 7.)

In addition, IPS submitted the Declaration of Jeffrey A. Humber with its Response, stating that the design, production, and distribution of the 2012 Product occurred in Collierville, Tennessee:

> The Plumbing Division of IPS, which is responsible for the [2010 Product] is headquartered in Collierville, Tennessee. This division includes engineering, sales, and distribution personnel who have knowledge of the [2012 Product]. Additionally [sic] many if not all of the documents relating to the design, engineering, and sales of the [2012 Product] are located in Collierville, Tennessee.

(Humber Decl., ECF 19-1, at PageID 160.) Collierville, Tennessee, is in the Western District of Tennessee. The Court, therefore, finds WCM's challenge to venue unpersuasive and that venue is proper in the Western District of Tennessee.

Furthermore, WCM conceded at the hearing that venue is proper in the Western District in Tennessee. The Court finds, in addition to the findings above, that WCM has abandoned its challenge to venue.

As a result, the Court finds that venue is proper in the Western District of Tennessee pursuant to 28 U.S.C. § 1391(b)(2) and that WCM has abandoned its arguments regarding improper venue. In light of the Court's findings, the Court need not

address IPS's alternative argument based on personal
jurisdiction.

## C.   Transfer to the Colorado District Court Is Not Appropriate.

WCM makes alternative arguments for transfer of venue:  if
venue is improper, WCM argues for transfer based on 28 U.S.C.
§ 1406(a); and, if venue is proper, WCM argues for transfer
pursuant to 28 U.S.C. § 1404(a).  (Def.'s Mem. in Supp., ECF
No. 7-1, at 8-11.)  As stated above, venue is proper in the
Western District of Tennessee pursuant to 28 U.S.C.
§ 1391(b)(2).  See supra Part II.B.  As a result, 28 U.S.C.
§ 1406(a) is not applicable, and the Court will consider
transfer of venue pursuant to 28 U.S.C. § 1404(a).[6]

"For the convenience of parties and witnesses, in the
interest of justice, a district court may transfer any civil
action to any other district or division where it might have
been brought or to any district or division to which all parties
have consented."  28 U.S.C. § 1404(a) (2006).

When considering a motion to transfer under 28 U.S.C.
§ 1404, "a district court should consider the private interests
of the parties, including their convenience and the convenience
of potential witnesses, as well as other public-interest

---

[6] "In reviewing a district court's ruling on a motion to transfer pursuant to
[28 U.S.C.] § 1404(a), [the Federal Circuit] appl[ies] the law of the
regional circuit . . . ."  In re Link_A_Media Devices Corp., 662 F.3d 1221,
1222-23 (Fed. Cir. 2011) (per curiam); see also In re Nintendo Co., 589 F.3d
1194, 1197 (Fed. Cir. 2009).

concerns, such as systemic integrity and fairness, which come under the rubric of interests of justice." Moore v. Rohm & Haas Co., 446 F.3d 643, 647 n.1 (6th Cir. 2006) (internal quotation marks omitted); see also Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30 (1988).

"As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate." Reese v. CNH Am. LLC, 574 F.3d 315, 320 (6th Cir. 2009) (quoting Phelps v. McClellan, 30 F.3d 658, 663 (6th Cir. 1994) and 28 U.S.C. § 1404(a)).

"[W]hen a party moves to transfer a case on the basis of a forum selection clause, the federal statute governing transfer motions controls the clause's interpretation." Preferred Capital, Inc. v. Sarasota Kennel Club, Inc., 489 F.3d 303, 306 (6th Cir. 2007) (citing Stewart Org., Inc., 487 U.S. at 29-30). "[T]he forum selection clause [is] considered as one of the factors in the motion to transfer test" under 28 U.S.C. § 1404(a).[7] Id. at 307 (citing Stewart Org., Inc., 487 U.S. at

---

[7] The case WCM relies on when asserting that a forum-selection clause requires dismissal or transfer of the action, Mossy Creek Mining, LLC v. Nyrstar IDB, LLC, No. 3:10-CV-328, 2011 U.S. Dist. LEXIS 114012, *21-23 (E.D. Tenn. Sept. 30, 2011), is not relevant to the instant action. (See Def.'s Reply, ECF No. 20, at 5.) Mossy Creek Mining, LLC, states that, when the parties have agreed to arbitrate in a particular forum, "a district court outside of that forum must either dismiss the action or transfer venue under 28 U.S.C. § 1404(a)" because "[t]he Federal Arbitration Act prohibits a district court from compelling parties to arbitrate outside of the district court's own district." Mossy Creek Mining, LLC, 2011 U.S. Dist. LEXIS 114012, at *21.

29-30); see also Langley v. Prudential Mortg. Capital Co., 546
F.3d 365, 369 (6th Cir. 2008) (per curiam).

In the case presently before this Court, IPS alleges that
WCM is incorporated, and has its principal place of business, in
Colorado. (Compl., ECF No. 1, ¶ 3.) WCM does not dispute this
allegation. The Court, therefore, finds that IPS could have
filed this declaratory-judgment action in the Colorado District
Court. See 28 U.S.C. § 1391(b).

The Court next considers the parties' arguments concerning
private convenience, the interests of justice, and the forum-
selection clauses in the Settlement Agreement and Stipulated
Consent Judgment.

**1.   The Private Interests of the Parties Weigh Against
       Transfer.**

The Court "should consider the private interests of the
parties, including their convenience and the convenience of
potential witnesses." Moore, 446 F.3d at 647 n.1 (internal
quotation marks omitted).

The parties argue that the following considerations are
relevant:  the convenience of the parties, the convenience of
witnesses, and access to proof; the plaintiff's choice of forum;
and the relative ability of the parties to bear costs. These
considerations are considered in turn.

---

This Court is not being asked to compel arbitration, so WCM's reliance on
Mossy Creek Mining, LLC, is misplaced.

### a. Considerations Regarding the Convenience of the Parties and Witnesses, and Access to Proof, Weigh Against Transfer.

WCM argues that "[t]he convenience of the parties, witnesses and access to proof factors" favor transfer "as a substantial number of the material witnesses and evidence of WCM are located in Colorado, and Colorado is where the alleged acts of WCM in conducting its business are likely to have been committed." (Def.'s Mem. in Supp., ECF No. 7-1, at 10.) Furthermore, WCM argues, "IPS has not provided allegations or evidence which link any facts or conduct to witnesses or sources of proof in Tennessee." (Id.)

IPS counters that "IPS's plumbing division is located in Collierville, Tennessee [sic] in this judicial district" and that "[t]he engineering, sales, and distribution personnel who are anticipated to be witnesses in the case, as well as the documents relating to the design, engineering, and sale of [the 2012 Product] are located in Collierville, Tennessee." (Pl.'s Resp., ECF No. 19, at 16; see also Humber Decl., ECF No. 19-1, at PageID 160.)

WCM's arguments are not persuasive, and IPS has shown that these considerations weigh against transfer. First, while WCM's witnesses and evidence may be located in Colorado, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer," In re Genentech, Inc., 566

34

F.3d 1338, 1345 (Fed. Cir. 2009) (internal quotation marks omitted).  Second, WCM was mistaken when it suggested that IPS's witnesses and sources of proof are not located in Tennessee. IPS has shown that its witnesses and sources of proof are located in the Western District of Tennessee.

As a result, WCM has not shown that considerations regarding convenience of the parties and witnesses, and access to proof, favor transfer.  The Court finds that these considerations weigh against transfer.

**b.  The Consideration of Plaintiff's Choice of Forum Weighs Against Transfer.**

WCM argues that "[a]s venue is improper, it follows that IPS's choice of forum must be accorded no weight."  (Def.'s Mem. in Supp., ECF No. 7-1, at 11.)  IPS counters that "IPS has chosen its home forum."  (Pl.'s Resp., ECF No. 19, at 15.)

As stated above, venue is proper in the Western District of Tennessee under 28 U.S.C. § 1391(b)(2).  See supra Part II.B. As a result, contrary to WCM's argument, IPS's choice of forum can be given weight.  See Union Planters Bank, N.A. v. EMC Mortg. Corp., 67 F. Supp. 2d 915, 921 (W.D. Tenn. 1999).  The Court finds that this consideration does not favor transfer because, by filing its lawsuit in this forum, IPS indicated that it finds the Western District of Tennessee more convenient.

As a result, IPS's choice of forum does not favor transfer. The Court finds that it weighs against transfer.

### c.   The Consideration of the Relative Ability of the Parties to Bear Expenses Does Not Favor Transfer.

In its Response, IPS argues that this consideration weighs against transferring this action:  "[T]he relative ability of litigants to bear expenses in any particular forum [] also weighs in IPS's favor." (Pl.'s Resp., ECF No. 19, at 16.)  IPS states that "WCM has instituted an action against IPS in this Court alleging infringement of six additional patents" after "WCM voluntarily withdrew its Complaint from the District of Colorado." (Id.; see also W.D. Tenn. No. 2:13-cv-02019, ECF No. 1.)  IPS argues that this indicates "that not only is WCM capable of litigating in this District, but it is actively and voluntarily pursuing litigation in this District." (Pl.'s Resp., ECF No. 19, at 17.)

WCM does not respond to this argument in its Reply.

Since WCM chose to pursue infringement of six unrelated patents in the Western District of Tennessee, it is reasonable to conclude that WCM can bear the expenses of litigating in this district.

This consideration, however, is indeterminate.  While IPS has shown that WCM can likely afford to litigate in this forum, IPS has not shown that IPS has less ability to bear expenses

36

"relative" to WCM.  As a result, the Court finds that this consideration is neutral:  it does not favor transfer and it does not weigh against transfer.

In summary, WCM does not argue persuasively that any consideration related to the private interests of the parties favors transfer to the Colorado District Court.  Rather, the Court finds that the two considerations raised by WCM weigh against transfer and that the consideration raised by IPS is neutral.

**2.   Public-Interest Concerns Do Not Favor Transfer.**

The Court "should consider . . . public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'"  <u>Moore</u>, 446 F.3d at 647 n.1 (internal quotation marks omitted).

The Court considers systematic integrity and fairness in turn.

**a.   Considerations of Systematic Integrity Do Not Favor Transfer.**

First, WCM argues that "local courts have a strong interest in having local controversies decided at home."  (Def.'s Mem. in Supp., ECF No. 7-1, at 10 (citing <u>Coors Brewing Co. v. Oak Beverage, Inc.</u>, 549 F. Supp. 2d 764, 773 (E.D. Va. 2008)).)  IPS counters that "WCM makes nothing more than conclusory statements to support its assertion that somehow this dispute is more

'local' to the District of Colorado than the Western District of
Tennessee." (Pl.'s Resp., ECF No. 19, at 17.)

The Court agrees with IPS.  In light of the fact that IPS's
plumbing division is located in this judicial district (see
Humber Decl., ECF No. 19-1, at PageID 160), this action is not
any more "local" to the Colorado District Court than it is to
the United States District Court for the Western District of
Tennessee.

Second, IPS argues that "it is judicially inefficient to
transfer this case to the District of Colorado while WCM
maintains active patent litigation in this very District."
(Pl.'s Resp., ECF No. 19, at 17.)

The Court does not find IPS's argument persuasive.  The six
patents at issue in WCM's infringement action against IPS are
unrelated to the patent at issue in the instant action.  (See
W.D. Tenn. No. 2:13-cv-02019, ECF No. 1.)  IPS does not explain
why it would be more efficient for the judiciary if the United
States District Court for the Western District of Tennessee
hears actions concerning unrelated patents.  IPS's argument
regarding efficiency is conclusory and, therefore, unpersuasive.

While not raised by the parties, the Court also finds it
relevant that the docket of the prior case in the Colorado
District Court indicates, and WCM confirmed at the hearing, that
the Colorado District Court made no legal or factual

determinations, and considered no motions, before the parties
settled.  (See D. Colo. No. 1:10-cv-00994.)  There is no
indication, therefore, that the Colorado District Court has any
special expertise or knowledge regarding WCM's Patent that would
make it a better forum.

As a result, considerations of systematic integrity do not
favor transfer.  The Court finds that these considerations are
neutral:  WCM has not persuaded the Court that these
considerations weigh in favor transfer, IPS has not persuaded
the Court that these considerations weigh against transfer, and
there is no indication that the Colorado District Court has any
special expertise or knowledge regarding WCM's Patent.

**b.   Considerations of Fairness Do Not Favor Transfer.**

The only argument in which WCM specifically addresses the
"interests of justice," is the following:

> The interests of justice factor weighs in favor of
> transferring this action to the District of Colorado
> as well.  On information and belief, there is no
> possibility of an unfair trial or harassment by
> transferring this action to Colorado, because IPS
> transacts a significant amount of business in Colorado
> and receives a significant amount of revenue and other
> benefits from Colorado.

(Def.'s Mem. in Supp., ECF No. 7-1, at 10-11.)

WCM's argument, however, indicates only that there would be
no prejudice in the Colorado District Court, not that transfer
will avoid prejudice to either party.  WCM's argument merely

indicates that fairness concerns would not make transfer to the Colorado District Court inappropriate.

As a result, considerations of fairness do not weigh in favor of transfer.  The Court finds that considerations of fairness are neutral.

In summary, public-interest concerns do not favor transfer to the Colorado District Court.  The Court finds that considerations of systematic integrity and fairness are neutral.

> **3.    The Forum-Selection Clauses Are Not Relevant to This Action and, Even If Considered, Are Not Sufficient to Persuade the Court that Transfer Is Appropriate.**

The Court now will consider, in turn, whether the forum-selection clauses are valid and binding; whether WCM admitted that the 2012 Product is not a colorable imitation of the 2010 American Brass Product; the scope of the forum-selection clauses; and whether the forum-selection clauses would make transfer appropriate in light of the other considerations under 28 U.S.C. § 1404(a).

> **a.    The Forum-Selection Clauses Are Valid and Binding on IPS for the Purposes of This Motion.**

IPS does not dispute that the forum-selection clauses in the Settlement Agreement and Stipulated Consent Judgment are valid and binding.  The Court, therefore, considers the forum-selection clauses valid and binding for the purposes of this Motion.

This, however, does not mean that the forum-selection clauses are relevant or require transfer of this action to the Colorado District Court.  See infra Part II.C.3.

### b.   WCM Did Not Admit that the 2012 Product Is Not a Colorable Imitation of the 2010 American Brass Product.

IPS argues that WCM stated in its letter dated July 20, 2012, "that it considers the [2012 Product] to be 'different' than the [2010 American Brass Product]," so "WCM effectively concedes that the [2012 Product] is not a colorable imitation of the previously accused product." (Pl.'s Resp., ECF No. 19, at 12-13.) IPS's argument refers to the following language in WCM's letter:

> In response to your last letter, you seem to focus on our previous claim construction directed to IPS' prior infringing device, in comparison with our present construction of the claims as it relates to IPS' redesigned device. As you can appreciate, because the two infringing products are different, our analysis is obviously directed to the distinctions of the respective features.

(ECF No. 4-6 at PageID 60 (emphasis added).)

IPS's argument is neither conclusive nor dispositive. A product can be both "different" and a "colorable imitation." When determining whether a product is a colorable imitation of a patented product,

> [t]he analysis must focus not on differences between randomly chosen features of the product found to infringe in the earlier infringement trial and the newly accused product, but on those aspects of the

41

accused product that were previously alleged to be, and
were a basis for, the prior finding of infringement,
and the modified features of the newly accused product.

TiVo Inc. v. EchoStar Corp., 646 F.3d 869, 882 (Fed. Cir. 2011)

(citation omitted).  A general statement that a product is

"different," therefore, is not sufficient to admit that a

product is not a colorable imitation:  a party must at least

state that a feature of a newly accused product that was

previously a basis for a finding of infringement is different.

As a result, WCM's general statement that "the two infringing

products are different" is not an admission that the 2012

Product is not a colorable imitation of the 2010 American Brass

Product.

      **c.  The Forum-Selection Clauses Are Limited to Disputes
      Related to the 2010 American Brass Product and
      "Colorable Imitations Thereof" and, Therefore, Not
      Applicable to IPS's Claim for Declaratory Relief for
      Infringement.**

In its Reply brief, WCM argues that this action,

arises over a disagreement between the parties as to
whether the restrictions placed on IPS by the
Settlement Agreement and/or Consent Judgment apply
. . . .   Stated another way, IPS brought this
[declaratory-judgment] Action to seek a declaration
that the [2012 Product] is not a colorable imitation of
the [2010 American Brass Product] — which would in turn
determine whether IPS has violated the Settlement
Agreement.

(Def.'s Reply, ECF No. 20, at 3.)

IPS argues that "IPS is not seeking any ruling from this

Court regarding the [Stipulated] Consent Judgment, and IPS's

42

compliance with the [Stipulated] Consent Judgment is not at
issue in this case." (Pl.'s Resp., ECF No. 19, at 13.)

The Court agrees with IPS. Whether a product is "colorable
imitation" and whether a product infringes are distinct
inquiries; the forum-selection clauses are limited to the 2010
American Brass Product and "colorable imitations" thereof; and
IPS asks this Court for a declaration that the 2012 Product does
not infringe WCM's Patent. These conclusions are discussed in
turn.

> **i.   Whether a Product Is a "Colorable Imitation" and
>        Whether a Product Infringes Are Distinct Inquiries.**

The Federal Circuit "reject[s] [the] infringement-based
understanding of the colorably different test." TiVo Inc., 646
F.3d at 882. To determine colorability,

> [t]he analysis must focus not on differences between
> randomly chosen features of the product found to
> infringe in the earlier infringement trial and the
> newly accused product, but on those aspects of the
> accused product that were previously alleged to be,
> and were a basis for, the prior finding of
> infringement, and the modified features of the newly
> accused product.

Id. (citation omitted). In contrast, infringement is a broader
inquiry to determine liability "when an unauthorized party
'makes, uses, offers to sell, or sells any patented invention,
within the United States or imports into the United States any
patented invention during the term of the patent.'" See

Superior Indus., LLC v. Thor Global Enters. Ltd., 700 F.3d 1287,
1294 (Fed. Cir. 2012) (quoting 35 U.S.C. § 271(a)).

Inquiries into infringement and colorability, therefore,
are distinct.

**ii.   The Settlement Agreement and the Stipulated Consent
        Judgment Are Limited to the 2010 American Brass
        Product and "Colorable Imitations" of That Product.**

The forum-selection clauses in the Settlement Agreement and
the Stipulated Consent Judgment are limited to disputes
regarding the 2010 American Brass Product and "colorable
imitations thereof."  The Settlement Agreement states that:
"[American Brass] shall . . . refrain in the Unites States from
making, selling, offering for sale, using, and/or importing
Accused Products"; and that "'Accused Products' as used in this
Agreement is understood to mean the [2010 American Brass
Product] and all colorable imitations thereof."  (ECF No. 20-2
at PageID 175.)  The Stipulated Consent Judgment states that the
Colorado District Court "permanently enjoins [American Brass and
its successors and ensigns] from directly or indirectly
infringing [WCM's Patent] . . . by making, using, selling,
offering for sale, and importing [the 2010 American Brass
Product] and colorable imitations thereof."  (ECF No. 7-3 at
PageID 107.)

The Settlement Agreement incorporates the Stipulated
Consent Judgment and states that it "shall be governed by and

44

construed in accordance with the laws of the State of Colorado."
(ECF No. 20-2 at PageID 175, 177.)  Colorado courts "consider
written contracts that are complete and free from ambiguity to
express the intention of the parties, and [Colorado courts] will
enforce these contracts according to their plain language."
SDI, Inc. v. Pivotal Parker Commercial, LLC, 292 P.3d 1165, 1169
(Colo. App. 2012) (citing Ad Two, Inc. v. City & Cnty. of Denver
ex rel. Manager of Aviation, 9 P.3d 373, 376 (Colo. 2000)).

     Both the Settlement Agreement and the Stipulated Consent
Judgment unambiguously state that they are limited to the 2010
American Brass Product and "colorable imitations thereof."  (See
Settlement Agreement, ECF No. 20-2, at PageID 175; D. Colo. J.,
ECF No. 7-3, at Page ID 107.)  Based on the plain language of
the agreements, the Court finds that the forum-selection clauses
contained in those agreements are limited to the 2010 American
Brass Product and "colorable limitations thereof."

     WCM's argument to the contrary is not persuasive.  WCM
argues that interpreting the forum-selection clause so as not to
apply to IPS's claim "places the cart before the horse, and
would produce a perverse result."  (See Def.'s Reply, ECF No.
20, at 7.)  WCM argues that the "illogical and absurd result" of
such an interpretation would be that "a dispute involving a
redesigned press-in trim kit could be brought in any district
court, and only if that court found that the redesigned product

                                45

was a 'colorable imitation' would venue be appropriate in Colorado." (Id.)

Contrary to WCM's argument, the Court's interpretation of the forum-selection clauses does not mean that those clauses are triggered only if a product is found to be a colorable imitation of the 2010 American Brass Product. Rather, the forum-selection clauses are triggered if either party brings a claim regarding the 2010 American Brass Product or a "colorable imitation thereof." It is not an "illogical and absurd result" for the Court to limit the forum-selection clauses to claims regarding the 2010 American Brass Product or "colorable imitations thereof" based on the plain language of the Settlement Agreement and Stipulated Consent Judgment.

At the hearing, WCM asserted that it intended to bring claims for violations of the Settlement Agreement and the Stipulated Consent Judgment. The Court will not consider claims that WCM may bring at some undetermined time in the future. AstraZeneca Pharm. LP v. Apotex Corp., 669 F.3d 1370, 1380 (Fed. Cir. 2012) ("'A claim is not ripe for adjudication if it rests on contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (quoting Texas v. United States, 523 U.S. 296, 300 (1998))); Winget v. JP Morgan Chase Bank, N.A., 537 F.3d 565, 582 (6th Cir. 2008) ("As a rule, we do not allow litigation on premature claims to ensure that courts

46

litigate only existing, substantial controversies, not hypothetical questions or possibilities." (internal quotation marks omitted)).

### iii. IPS Requests Relief Regarding Infringement, Not Regarding Colorability.

IPS requests a declaration that the 2012 Product does not infringe WCM's Patent:  "Plaintiff IPS Prays that this Court enter judgment:  (a) Declaring that Plaintiff, and including specifically [the 2012 Product] . . . has not infringed and is not infringing any valid purported patent rights of WCM in [WCM's Patent] . . . ."  (Compl., ECF No. 1, ¶ 24(a).)  IPS's Complaint, therefore, requests relief regarding infringement of WCM's Patent; it does not request relief regarding whether the 2012 Product is a "colorable imitation" of the 2010 American Brass Product or whether the 2012 Product violates the Settlement Agreement or the Stipulated Consent Judgment.

WCM's arguments to the contrary are not persuasive.  WCM argues that "IPS brought this [declaratory-judgment] action to seek a declaration that the [2012 Product] is not a colorable imitation of the [2010 American Brass Product]."  (Def.'s Reply, ECF No. 20, at 3.)  This argument is belied by the language of the Complaint, which uses the words "infringed" and "infringing" and not the words "colorable imitation."  (See ECF No. 1 ¶ 24(a).)

WCM also makes two assertions based on the fact that the Settlement Agreement refers to "any dispute arising from the Settlement Agreement." (See Def.'s Reply, ECF No. 20, at 4; see also Settlement Agreement, ECF No. 20-2, at PageID 177.) WCM relies on those assertions to conclude that "[t]he single count asserted by IPS, which seeks a declaration of non-infringement of [WCM's Patent by] a redesign of the [2010 American Brass Product], is really a claim that the [2012 Product] does not breach the Settlement Agreement." (Def.'s Reply, ECF No. 4, at 4.)

WCM's assertions are baseless. First, WCM relies on Union Planters Bank, N.A., to assert that the United States District Court for the Western District of Tennessee has enforced a forum-selection clause "that used broad language, such as 'arising,' as is present in the parties' Settlement Agreement." (Id.) The agreement under consideration in Union Planters Bank, N.A., stated that "all disputes arising hereunder shall be submitted to" Texas courts, see Union Planters Bank, N.A., 67 F. Supp. 2d at 917, and the Settlement Agreement in the instant action states that the Colorado District Court "will have exclusive jurisdiction over any dispute arising from this Settlement Agreement" (ECF No. 20-2 at PageID 177).

WCM, however, overlooks an important distinction between the agreement considered in Union Planters Bank, N.A., and the

Settlement Agreement being considered by this Court.  The
Settlement Agreement forbids IPS "from making, selling, offering
for sale, using, and/or importing" the 2010 American Brass
Product "and all colorable imitations thereof." (See ECF No.
20-2 at PageID 175.)  In Union Planters Bank, N.A., there is no
indication that the agreement under consideration had a similar
provision limiting the term "arising hereunder."  See Union
Planters Bank, N.A., 67 F. Supp. 2d at 917.  Union Planters
Bank, N.A., therefore, does not allow WCM to infer that the
language "arising from" in the Settlement Agreement negates the
language that limits the Settlement Agreement to the 2010
American Brass Product "and all colorable imitations thereof."

Second, WCM asserts that "[t]here can be little debate that
the central dispute between the parties in this action 'arises'
out of the Settlement Agreement." (Def.'s Reply, ECF No. 20, at
4.)  WCM supports this assertion by citing to three cases. (See
id.)

The cases cited by WCM, however, are not applicable to the
instant action because those cases interpreted broader contract
language contained in arbitration clauses. (See id.)  WCM first
cites GATX Management Services, LLC v. Weakland, 171 F. Supp. 2d
1159, 1163 (D. Colo. 2001).  In GATX Management Services, LLC,
the Colorado District Court interpreted a contract provision
much broader than the one before this Court:  "The arbitration

49

provision mandates arbitration for 'any and all claims, demands,
causes of action, disputes, controversies, and other matters in
question arising out of or relating to this Agreement, any of
its provisions, or the relationship between the parties created
by this Agreement.'" GATX Mgmt. Servs., LLC, 171 F. Supp. 2d at
1163.  Furthermore, the Colorado District Court found that
arbitration clause broad enough to include "not only those
issues arising out of the employment contract, but even those
issues with any connection to the contract or to the
relationship between the parties" in light of the "strong
federal policy favoring arbitration for dispute resolution" that
"'requires a liberal reading of arbitration agreements.'"  Id.
at 1162-63 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr.
Corp., 460 U.S. 1, 22 n.27 (1983)).

    WCM then cites P & P Industries, Inc. v. Sutter Corp., 179
F.3d 861, 871 (10th Cir. 1999), which interpreted an arbitration
clause mandating arbitration for "'[a]ny controversy, claim, or
breach arising out of or relating to this agreement'" in light
of "the strong presumption in favor of arbitrability."  P & P
Indus., Inc., 179 F.3d at 871 (alteration in original).  The
last case cited by WCM is American Recovery Corp. v.
Computerized Thermal Imaging, Inc., 96 F.3d 88, 93 (4th Cir.
1996), which interpreted an arbitration clause mandating
arbitration of "any dispute that 'ar[ose] out of or related to'

the consulting agreement" in light of Supreme Court precedent stating that "'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Am. Recovery Corp., 96 F.3d at 92-93 (alteration in original) (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25).

In the cases cited by WCM, not only is the language of the contracts at issue broader, but the courts also interpreted that language in light of the federal policy favoring arbitration. There is no indication in those cases that interpretation of the broader language of those contracts should apply to the narrower language at issue in the instant case, which refers only to "any dispute arising from this Settlement Agreement" (ECF No. 20-2 at PageID 177). Furthermore, there is no indication that the federal policy in favor of arbitration agreements should apply to the Settlement Agreement, which does not contain an arbitration clause. WCM's citations, therefore, do not support its assertion that the instant action "'arises' out of the Settlement Agreement" (see Def.'s Reply, ECF No. 20, at 4).

In summary, the forum-selection clauses are not applicable to the action currently before this Court. As a result, the forum-selection clauses do not influence the considerations under 28 U.S.C. § 1404(a). Since those considerations weigh

against transferring this action to the Colorado District Court,
the Court finds that transfer of venue is not appropriate.

### c. Even If Considered in Light of the Forum-Selection Clauses, the Considerations Under 28 U.S.C. § 1404(a) Do Not Favor Transfer.

"[T]he forum selection clause [is] considered as one of the
factors in the motion to transfer test" under 28 U.S.C.
§ 1404(a). Preferred Capital, Inc., 489 F.3d at 307 (citing
Stewart Org., Inc., 487 U.S. at 29-30); see also Langley, 546
F.3d at 369. The district court should "address such issues as
the convenience of [the indicated] forum given the parties'
expressed preference for that venue, and the fairness of
transfer in light of the forum-selection clause and the parties'
relative bargaining power." Stewart Org., Inc., 487 U.S. at 29.
"It is conceivable in a particular case . . . that because of
[the factors considered under 28 U.S.C. § 1404(a)] a district
court acting under [28 U.S.C.] § 1404(a) would refuse to
transfer a case notwithstanding the counterweight of a forum-
selection clause . . . ." Id. at 30-31.

WCM asserts that the forum-selection clauses "outweigh[]
any convenience arguments [IPS] has made in an attempt to
maintain the case in Tennessee." (Def.'s Reply, ECF No. 20, at
3.) In addition, WCM refers to the arguments it made regarding
considerations under 28 U.S.C. § 1404(a):

> In its Motion, WCM has presented the reasons why, should the Court find that dismissal is not proper, it must therefore transfer this action to the District of Colorado pursuant to [28 U.S.C. §] 1404(a). Those same reasons apply in view of the forum selection clause IPS agreed to in October, 2010.

(Id. at 6.)

In the instant action, the parties do not argue that the "relative bargaining power," see Stewart Org., Inc., 487 U.S. at 29, of the parties that negotiated the forum-selection clauses is significant. As a result, the Court does not rely on this consideration.

The Court considers, in turn, the forum-selection clauses' effect on WCM's arguments regarding considerations of private convenience and public interest.

**i.  Even in Light of the Parties' Expressed Preference for the Colorado District Court, Considerations of Convenience Would Not Favor Transfer.**

First, WCM argues that "a substantial number of the material witnesses and evidence of WCM are located in Colorado, and Colorado is where the alleged acts of WCM in conducting its business are likely to have been committed." (Def.'s Mem. in Supp., ECF No. 7-1, at 10.) The forum-selection clauses, however, do not change the fact that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." See In re Genentech, Inc., 566 F.3d at 1345 (internal quotation marks omitted).

Second, WCM argues that "IPS has not provided allegations or evidence which link any facts or conduct to witnesses or sources of proof in Tennessee." (Def.'s Mem. in Supp., ECF No. 7-1, at 10.) The forum-selection clauses, however, do not change the Court's finding that IPS has provided such allegations and evidence. See supra Part II.C.1.a.

Finally, after the present action was commenced, WCM filed a separate action with this Court alleging that IPS infringed six unrelated patents held by WCM. (W.D. Tenn. No. 2:13-cv-02019, ECF No. 1.) While the six patents referenced in WCM's infringement action are different from the patent at issue in the instant action, transferring the instant action to the Colorado District Court would require the parties to pursue litigation with one another in two different forums.

WCM does not indicate how enforcing the forum-selection clauses would counterbalance the inconvenience of litigating in two forums. As indicated by the docket in the action between American Brass and WCM, and as admitted by WCM at the hearing, the Colorado District Court did not make any findings regarding WCM's Patent or the 2010 American Brass Product before the parties settled. (See D. Colo. No. 1:10-cv-00994.) As a result, the parties' choice of forum does not reflect a preference for a court that is more familiar with the issues raised in the present action.

The forum-selection clauses, therefore, do not change the Court's conclusion regarding considerations of private convenience.  See supra Part II.C.1.  Even if considered in light of the forum-selection clauses, the Court finds that considerations of private convenience would still weigh against transfer.

### ii.  Even in Light of the Forum-Selection Clauses, Public-Interest Concerns Would Not Favor Transfer.

First, WCM argues that "local courts have a strong interest in having local controversies decided at home."  (Def.'s Mem. in Supp., ECF No. 7-1, at 10 (citing Coors Brewing Co., 549 F. Supp. 2d at 773).)  The forum-selection clauses, however, do not change the fact that the controversy is between parties from different states and that IPS's plumbing division is located in the Western District of Tennessee.  See supra Part II.C.2.a. The controversy remains just as local to the United States District Court for the Western District of Tennessee as it does to the Colorado District Court.

Second, the forum-selection clauses do not change the fact that the Colorado District Court has no special expertise or knowledge regarding WCM's Patent.  See supra Part II.C.2.a.

Finally, WCM argues that "there is no possibility of an unfair trial or harassment by transferring this action to Colorado, because IPS transacts a significant amount of business

in Colorado and receives a significant amount of revenue and
other benefits from Colorado."  (Def.'s Mem. in Supp., ECF
No. 7-1, at 11.)  At most, the forum-selection clauses indicate
that IPS's successor, American Brass, agreed that it will not be
subject to an unfair trial or harassment in the Colorado
District Court.  As stated above, this argument does not favor
transfer because it merely indicates that transfer to the
Colorado District Court would not be inappropriate for this
reason.  See supra Part II.C.2.b.

Even if considered in light of the forum-selection clauses,
therefore, the Court finds that public-interest concerns would
not weigh in favor of transfer.

In summary, the forum-selection clauses do not indicate
that considerations of private convenience or public interest
favor transfer.  Under these circumstances, the Court finds that
this is a case in which "a district court acting under [28
U.S.C.] § 1404(a) [can] refuse to transfer a case
notwithstanding the counterweight of a forum-selection clause."
See Stewart Org., Inc., 487 U.S. at 31.

### 4.   WCM Does Not Offer Any Considerations that Favor Transfer to the Colorado District Court.

The considerations raised by the parties related to private
convenience and public interest do not weigh in favor transfer
of this action to the Colorado District Court.  Rather, the

considerations are either neutral or weigh against transferring this action.  The forum-selection clauses in the Settlement Agreement and the Stipulated Consent Judgment are not applicable to the action presently before this Court because those forum-selection clauses are limited to the 2010 American Brass Product and "colorable imitations thereof."  Furthermore, even if considered in light of the forum-selection clauses, the considerations under 28 U.S.C. § 1404(a) do not weigh in favor transferring this action to the Colorado District Court.

As a result, the Court holds that transferring this action to the Colorado District Court is not appropriate.  See 28 U.S.C. § 1404(a).

### III. CONCLUSION

For the reasons stated above, Defendant's "Motion to Dismiss for Lack of Declaratory Judgment Jurisdiction, Improper Venue Pursuant to FRCP 12(b)(3), or in the Alternative, to Transfer Action to the District of Colorado" (ECF No. 7) is DENIED.

**IT IS SO ORDERED,** this 29th day of March, 2013.

/s/ Jon P. McCalla
JON P. McCALLA
CHIEF U.S. DISTRICT JUDGE